UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHAEL A. JACKSON                      CIVIL ACTION NO. 12-cv-2132

VERSUS                                  JUDGE WALTER

BURL CAIN                               MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Michael Jackson ("Petitioner") of two counts of armed robbery. He was sentenced, after some modification on appeal, to concurrent 75-year terms without benefits. His convictions were affirmed on direct appeal. State v. Jackson, 979 So.2d 678 (La. App. 2d Cir. 2008), writ denied, 997 So.2d 560 (La.). He also filed a post-conviction application in state court. Petitioner now seeks federal habeas corpus relief on several claims. For the reasons that follow, it is recommended his petition be denied.

**Sufficiency of the Evidence**

    **A. The Evidence**

Steven Thompson was leaving his job on Marshall Street in downtown Shreveport one evening when he heard a tap on the window of his Kia Spectra. He saw the tap was caused by a black man holding a pistol. The man ordered him out of the car. A second black man wearing a hooded sweatshirt grabbed Thompson, pushed him to the ground, and took his car keys and wallet from his pockets. The two men left in the Kia.

Shreveport police assembled a photo lineup that included Petitioner's picture. Thompson could not make a positive identification, but he testified that both men were probably under 21 and the gunman had braided hair. The Kia was found in neighboring Bossier City a few days later. Two fingerprints were found on the outside of the passenger door that matched file prints of Petitioner.

About two weeks after the Kia was stolen, Melvin Nelson was driving his Mazda Protegé in the same area of downtown Shreveport one night. While waiting at a red light near the courthouse, two black men wearing hoodie sweaters (the hoods were not pulled over their heads) walked up to his car. One had a gun, and the other told Nelson to get out of the car. Nelson was forced to empty his pockets. The robbers took some of his property and then drove east on Texas Street toward Bossier City.

Two nights later, a victim reported an attempted carjacking at the Princeton post office in Bossier Parish. The suspects' vehicle was described as a tan Mazda Protegé carrying four black males. A deputy saw the car speeding on I-220. After a high-speed chase into Caddo Parish and back to Bossier, the Mazda stopped, and all four men ran. All four were soon caught, including Petitioner. The other men said that Petitioner had been driving the Mazda. The men who fled the Mazda discarded two weapons, but neither of them yielded any useable fingerprints.

Police showed Mr. Nelson photo lineups that included photos of Petitioner and Eddie Hamilton, who was one of the other men in the Mazda. Nelson identified both of them as his carjackers. Eddie Hamilton was allowed to plead guilty to first-degree robbery in

exchange for a nine-year sentence and a promise to testify truthfully against Petitioner. Hamilton admitted at his plea hearing that he and Petitioner committed the robbery that deprived Mr. Nelson of his Mazda.

Hamilton did not live up to his bargain at trial. He admitted that Petitioner was his "homeboy," but he said they never robbed anyone. He admitted giving a statement to police about his participation in armed robberies, but he said the detective "scared me when I was 18," and he was intimidated at the prospect of a 99-year sentence. He said, "We didn't really rob that dude." He admitted being in the Mazda and fleeing from police, but he said it was because someone had committed another crime in Bossier that had nothing to do with the crimes at issue in this case. Hamilton claimed that he knew Mr. Nelson and had borrowed the Mazda from him with a promise to return it, but he did not honor his agreement. Mr. Nelson, however, never indicated in his testimony that he knew Hamilton before the crime.

### B. Jackson; Section 2254(d) Standard

Petitioner was convicted of two counts of armed robbery, which Louisiana law defines as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be

drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011). The state appellate court found on direct appeal that the evidence was sufficient under the Jackson standard.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012).

**C. Analysis**

Petitioner's fingerprint was found on Mr. Thompson's Kia. Mr. Thompson testified that he did not know Petitioner and could think of no reason why Petitioner's fingerprints would be on his car. The Kia was recovered in Bossier Parish, the same parish where Petitioner and the other men were arrested. Thompson described his robbers as black males probably younger than 21, with the gunman having braided hair. Petitioner was 18 at the time of the crime. He contends that his hair was too short to have been braided, but the state court said that the jury could infer from the photo lineup whether Petitioner's hair might have

been braided at the relevant time. As for the robbery from Mr. Nelson, the victim positively identified Petitioner as one of the men who stole his Mazda from him at gunpoint.

Petitioner makes various arguments about which of the other men might have had braided hair and points to what he perceives as weaknesses in the evidence such as the compass direction a victim said he walked after the robbery and the lack of fingerprints on the guns that were recovered. There are any number of arguments that could be raised to attack the strength of the State's case, but the jury was presented with all of the facts from both sides of the dispute, and they chose to credit the State's evidence. The unexplained fingerprint on the first victim's car and the positive identification testimony by the second victim are sufficient, under the lenient Jackson and Section 2254(d) standard, to defeat the habeas attack on the sufficiency of the evidence. The undersigned must recommend that this claim be denied.

**Ineffective Assistance of Counsel**

    **A. Introduction; Petitioner's Burden**

Petitioner asserts a number of claims that his counsel rendered ineffective assistance. To prevail on such a claim, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Each of Petitioner's claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes

the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### B. Plea Advice

Petitioner was offered a plea bargain that included a 12-year sentence. Petitioner rejected the offer. He now contends that his counsel was ineffective because counsel did not adequately inform him of the strength of the State's case.

The Sixth Amendment right to counsel extends to the plea bargaining process. The performance prong of the Strickland standard, discussed above, requires the defendant to show that counsel's representation fell below an objective standard of reasonableness. To establish prejudice when a defendant rejects a plea offer, he must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been accepted and approved by the court and prosecutor, and the conviction or sentence

under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Lafler v. Cooper, 132 S.Ct. 1376, 1384-85 (2012).

Petitioner presented this claim in his post-conviction application. He admitted that he was aware of the offer, but he said he rejected it because he believed there was no evidence to convict him and counsel did not tell him otherwise. Petitioner claimed that he languished in jail for years without advice of counsel and was simply unaware of the evidence that indicated his guilt. Judge Michael Pitman, who addressed the post-conviction application, noted that the minutes showed that from the date counsel was appointed, Petitioner appeared in court with counsel every several months, undermining his claim that he went for years without advice of counsel. The State points out in its brief that Petitioner was also present for the preliminary examination that included testimony about the fingerprint and lineup identification evidence. The preliminary examination also included testimony that Petitioner's alibi that he originally gave police was refuted by Eddie Hamilton's mother. See Tr. 238-54. Judge Pitman observed that Petitioner's claim was supported only by conclusory allegations, and he rejected it on the merits. Tr. 798-99.

The state appellate court, in addressing all of the ineffective assistance claims, summarily stated that Petitioner "has failed to demonstrate a reasonable probability that, but for defense counsel's alleged unprofessional errors, the result of the proceedings would have been different." Tr. 934. The Supreme Court of Louisiana denied writs without comment. Tr. 982.

Petitioner has not articulated or presented any specific facts that would indicate his attorney (the late Warren Thornell, who enjoyed an excellent reputation in the legal community) did not communicate to him the strength of the State's case. If anything, the contrary is more likely. Defense counsel usually urge clients to accept such reasonable plea offers, only to have their clients stubbornly decline them and insist on trial. In any event, the record shows that Petitioner sat in the courtroom early in the case and listened as the prosecution outlined its evidence against him at the preliminary hearing. The claim that Petitioner rejected the plea offer because counsel did not convey to Petitioner the strength of the State's case has no merit.

### C. No Objection to Admission of Guns

Defense counsel filed a motion for discovery that included a request to reveal the existence of and permit inspection of any tangible objects intended for use by the State as evidence at trial. Tr. 32-33. The State filed a response that included all Shreveport police reports, warrants, and related documents. It does not appear those reports specifically listed the Bryco Arms 9 mm pistol or Intratec 9 mm pistol that were obtained by Bossier authorities when the men fled the Mazda. The State introduced those items at trial. The reports produced in discovery did, however, refer numerous times to firearms being used in the crimes. The State's discovery response stated that the State intended to introduce at trial "all items of evidence which are referred to in the attached reports. It added: "All items of evidence may be examined by defense counsel upon appointment with the undersigned Assistant District Attorney." Tr. 37.

Petitioner argues that counsel was ineffective because he did not object, when the guns were introduced at trial, that they should be inadmissible as not produced during discovery. Petitioner argued that had he known the guns were going to be used at trial he could have called Jonathan Campbell as a witness to testify that the guns belonged to him. Judge Pitman denied this claim on post-conviction for failure to meet the burden of Strickland, being conclusory, and a second attempt to attack the sufficiency of the evidence. Tr. 799.

It is doubtful counsel could have succeeded in excluding the guns with the requested objection, and the lack of a meritless objection is not ineffective assistance. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994). The district attorney's discovery response indicates that a form of "open file" discovery was made available to defense counsel, and he would have either actually examined the guns or had the opportunity to do so before trial. There is also little basis for a claim of any resulting prejudice, as the guns were not directly linked to Petitioner. Having the ability to call a witness to claim ownership of the guns would not have aided the defense significantly; it was use of a gun in a robbery, not ownership, at issue at the trial.

### D. No Objection to Hamilton's Testimony

Eddie Hamilton entered into a plea bargain that included his agreement to be sworn and testify against his co-defendants. Tr. 180. He agreed at his plea hearing that he and Petitioner made a plan to rob Melvin Nelson of his Mazda with the use of a firearm. Tr. 183. When Hamilton took the stand at Petitioner's trial, however, he denied committing any

robbery with Petitioner and said he made his earlier statements due to his fear of receiving a lengthy sentence. The prosecutor then impeached him by use of the transcript of his guilty plea. Tr. 338-55. Petitioner argues that his attorney should have objected to the State's use of the coconspirator's conviction as evidence of Petitioner's guilt.

The general rule in federal courts is that "evidence about the conviction of a co-conspirator is not admissible as substantive proof of the guilt of a defendant." U.S. v. Ramos-Cardenas, 524 F.3d 600, 610 (5th Cir. 2008), quoting U.S. v. Leach, 918 F.2d 464, 467 (5th Cir. 1990). But prosecutors have been allowed to blunt the sword of anticipated impeachment by eliciting on direct examination of a government witness that the witness was convicted in the case. Leach, 918 F.2d at 467. It appears many state courts also generally find inadmissible evidence of a co-defendant's conviction or acquittal. State v. Weaver, 873 So.2d 909, 915 (La. App. 2nd Cir. 2004) (collecting cases).

Petitioner has not shown that the rule is clearly established in the Louisiana courts to the extent that counsel could have prevented the introduction of the guilty plea as it was presented in this case. The State did not simply present evidence that a co-defendant or co-conspirator was convicted and then argue that it constituted evidence of Petitioner's guilt. Hamilton's conviction was employed primarily in an unsuccessful effort to get Hamilton to honor his plea bargain and testify about Petitioner's involvement in the crimes. It is debatable whether counsel could have successfully objected to the examination of Hamilton.

Petitioner also complains that the State's introduction of the guilty plea on direct examination denied the defense the force of impeaching Hamilton before the jury. This

suggestion that Petitioner wanted defense counsel to be able to impeach Hamilton with evidence of his guilty plea in inconsistent with the argument above. In any event, the defense is not entitled to object that it was denied the ability to conduct a "gotcha" cross-examination on the topic of a prior conviction. Any objection by counsel along those lines would have been overruled, so this claim lacks merit. Hedgespeth v. Warden, 2015 WL 1089325, *4 (W.D. La. 2015); Greer v. Warden, 2014 WL 4387295 (W.D. La. 2014) (both rejecting similar habeas arguments). Judge Pitman's rejection of this claim was not an objectively unreasonable application of the Strickland standard.

### E.  No Limiting Instruction Request

Petitioner argues that counsel was deficient for not asking the court to instruct the jury that Eddie Hamilton's testimony about his prior conviction could not be used as substantive evidence of Petitioner's guilt. As noted above, it appears to be the general rule in many jurisdictions that evidence of a coconspirator's conviction is generally not admissible as substantive proof of guilt, but the rule is not uniform, and Petitioner has not demonstrated that it was sufficiently well established that counsel could have obtained a limiting instruction under the unique circumstances of this case. It may have been a good strategy to request such an instruction, or perhaps it was wiser to not draw more attention to the issue, but the court cannot say that it was constitutionally deficient performance to not ask for one in this trial. The state court's denial of this claim is perhaps debatable, but it was not an objectively unreasonable application of Strickland.

### F. No Expert Testimony

Amy Moeller, who worked with the crime scenes unit for the Shreveport Police Department for more than 10 years, testified regarding the fingerprints recovered from the Kia. She had testified as an expert at least 22 times in state and federal courts. She described the process of removing the fingerprint from the car and comparing it to other prints. She found that the recovered print and a print from Petitioner were "a match." She said she had no doubt that the prints were made by the same person. Defense counsel cross-examined her about other prints recovered from the car and how she was unable to match them. Tr. 301-09.

Petitioner argues that defense counsel was ineffective because he did not secure a defense expert to contest the fingerprint evidence. He also argues, with no explanation, that counsel should have requested funding for an expert to testify about Petitioner's mental condition.

If counsel had requested appointment of an expert at the expense of the state, state law would have required that he establish a reasonable probability that an expert would be of assistance to the defense and that the denial of expert assistance would result in a fundamentally unfair trial. To meet that standard, a defendant must establish with a reasonable degree of specificity that the expert assistance is required to answer a substantial issue or question that is raised by the prosecution's case or to support a critical element of the defense. State v. Lee, 879 So.2d 173, 176-77 (La. App. 1st Cir. 2004), citing State v. Touchet, 642 So.2d 1213 (La. 1994). Petitioner has offered nothing more than speculation

that weather may have affected the quality of the fingerprints. He gives no explanation or factual basis for the suggestion that counsel should have requested a mental health expert.

The speculation offered by Petitioner is a far cry from the reasonable degree of specificity that must be shown to be entitled to an appointed expert. Petitioner has not articulated a basis for the appointment of an expert, so counsel was not ineffective for failing to make such a request, and the state courts did not make an objectively unreasonable application of Strickland when they denied this claim. See Guidry v. Cain, 2005 WL 1330133 (W. D. La. 2005) (Hill, M.J.) (rejecting Strickland claim based on lack of request for pathology expert because petitioner failed to identify an expert witness who would have delivered testimony favorable to the defense); Hansbro v. Cain, 2006 WL 3488729 (W.D. La. 2006) (Hornsby, M.J.) (rejecting Strickland claim based on lack of request for DNA expert because petitioner did not show reasonable probability expert would have been of assistance). "Strickland does not ... requir[e] for every prosecution expert an equal and opposite expert from the defense." Harrington, 131 S.Ct. at 791.

**G. No Motion to Suppress**

Detective Hindenberger assembled a six-person photo lineup of people of the same gender, race, and similar facial features. He showed it to Mr. Nelson, who selected Petitioner's photo in position number four. Nelson made a similar identification of Eddie Hamilton from another photo lineup. Hindenberger was on active military duty in Iraq at the time of trial, and his co-worker Detective Jeff Brown testified about the procedure. He said

that the photo arrays are usually prepared by the AFIS operator, who has access to multiple photos. Tr. 326-32.

Petitioner argued in his post-conviction application that counsel was ineffective because he did not file a motion to suppress Nelson's identification. Petitioner asserts that his photo was placed "top center," and he says he was the only man of his age and skin complexion in the lineup. The trial testimony was that his photo was in position four of six. There are copies of lineups in the investigative materials filed with this court, but the copies are not of sufficient quality to assess the similarity of the photos. Tr. 144, 151-55.[1] He also argues that it is potentially suggestive if the officer knows prior to presentation which of the photos is of the suspect. Petitioner does not contend there was actual hinting or coaching; he merely contends that there was an opportunity for abuse.

The state court denied this claim as based on conclusory statements. Tr. 800. When counsel are faulted for not filing a motion to suppress based on the Fourth Amendment, a petitioner must prove that the Fourth Amendment claim was meritorious and that there was a reasonable probability the verdict would have been different absent the excludable evidence. Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007). A similar burden applies on this Strickland claim that

---

[1] The lineup featuring Petitioner was exhibit S-4 at trial. Tr. 328-30. It appears, as per custom, that the trial exhibits were not included in the record filed with this court. That is quite reasonable with respect to exhibits such as guns or drugs, but it benefits the parties and the court to submit exhibits such as confessions or lineups that are directly relevant to a claim. The State should supplement the record with a quality copy of the relevant lineup or cite to a page in the record where such a copy exists.

counsel should have moved to suppress the lineup identification. Petitioner has offered nothing but speculation and unsupported facts for his contention. There is no basis in the record to find that such a motion would have been successful[2], so the state court's rejection of this claim was not an objectively unreasonable application of Strickland.

**Vouching for Witness**

Defense counsel, in closing argument, said, "Steve Thompson made, I think, a very credible witness." He suggested that this was because Thompson, when "presented [with] a photo lineup, could not identify anyone in those photo lineups" even though Petitioner's photo was in the lineup. Tr. 391. In rebuttal, the prosecutor stated:

> He (defense counsel) talked about Steve Thompson. I'm glad that we agree that Mr. Thompson is a very credible witness, and he is. And I would also say that Melvin Nelson is a very credible witness.

The prosecutor went on to describe Nelson's testimony. Tr. 397. Petitioner argues that the prosecutor improperly vouched for the credibility of these witnesses.

A prosecutor's vouching for the credibility of witnesses improperly suggests to the jury (1) that evidence not presented at trial but known to the prosecutor supports the charges against the defendant so that the conviction is not based only on evidence presented to the jury, and (2) that the prosecutor's opinion, which carries an imprimatur of the State, should

---

[2] Had a motion to suppress been filed, the state court would have looked to the multi-factor test of Neil v. Biggers, 93 S.Ct. 375 (1972). Unless the circumstances showed "a very substantial likelihood of irreparable misidentification," the identification would be admissible, and its weight would be for the jury to decide. Manson v. Brathwaite, 97 S.Ct. 2243, 2254 (1977).

be trusted over the jury's own view of the evidence. U.S. v. Young, 105 S.Ct. 1038 (1985); Woodfox v. Cain, 609 F.3d 774, 805 (5th Cir. 2010). "A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses." U.S. v. Gracia, 522 F.3d 597, 600 (5th Cir. 2008).

The test for improper vouching for the credibility of a witness is whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt. U.S. v. McCann, 613 F.3rd 486, 495 (5th Cir. 2010). The comments "are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair." Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002). "Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or ... the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." Id. at 245.

Petitioner raised this argument on direct appeal. The appellate court found that it was procedurally barred by the lack of a contemporaneous objection at trial and that there was no merit. It said that the recognition of defense counsel's admission that Thompson was a very credible witness was an entirely proper comment based on the evidence. State v. Jackson, 979 So.2d at 683. The court did not mention the prosecutor's comment on Melvin Nelson's credibility.

The comments at issue were brief, rather than persistent and pronounced, and they did not suggest that the prosecutor possessed evidence of guilt that was not presented at trial. The comments were obviously an attempt to take advantage of a statement by defense counsel, which was reasonable itself, but they flirted with crossing the line into prohibited vouching for the witnesses. In any event, the one-time comments were not so prejudicial that they rendered the trial fundamentally unfair. They were three sentences among a lengthy argument that was otherwise dedicated to the facts presented at trial, and there is no reason to believe that the result might have different had the remarks not been made. The state court's rejection of this claim was not an objectively unreasonable application of clearly established federal law as decided by the Supreme Court, so relief is not available.

**Impeachment of Eddie Hamilton**

Petitioner repeats his claims that the State should not have been allowed to impeach Hamilton with his prior guilty plea and statements that implicated Petitioner. He argues that Hamilton told the prosecutor during a recess that he would not implicate Petitioner if called to testify, but there is absolutely no evidence in the record to support this assertion. Petitioner's complaints regarding Hamilton's testimony were otherwise addressed above.

**Perjured Testimony**

Petitioner argues that the prosecutor knew that Eddie Hamilton would lie at trial and deny his prior implications of Petitioner, but the prosecutor nonetheless called Hamilton to the stand and allowed him to give false testimony. The prosecutor later charged Hamilton

with perjury. Petitioner contends that these events somehow amount to improper use of perjured testimony that should result in his conviction being vacated.

The Due Process Clause of the Fourteenth Amendment forbids the prosecution to knowingly to use, or fail to correct, perjured testimony. Giglio v. U.S., 92 S.Ct. 763, 766 (1972); Napue v. Illinois, 79 S.Ct. 1173, 1178-79 (1959). To prove that the prosecution has denied him due process of law by relying on perjurious testimony, a petitioner must prove that (1) a witness for the state testified falsely; (2) the state knew the testimony was false; and (3) the testimony was material. Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000), citing Giglio, supra.

This claim is meritless. The prosecution did not rely in any way on the allegedly false aspects of Hamilton's testimony to support its case. Rather, the State went to great lengths to impeach Hamilton and demonstrate that he was lying. Petitioner raised this claim on direct appeal. The appellate court found there was "absolutely no substance" to the claim because the prosecutor was obviously surprised by the testimony that was opposite Hamilton's admissions at his plea hearing. There was no record support for any claim that the prosecutor knowingly offered perjured testimony. State v. Jackson, 979 So.2d at 683. That was a reasonable resolution of claim that is well supported by the record. Petitioner is not entitled to relief on this final claim.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days

from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 10th day of July, 2015.

Mark L. Hornsby
U.S. Magistrate Judge